UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PENSION FUND OF CEMENT MASONS' UNION LOCAL NO. 502 *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 24-cv-6229 |
| v. | ) ) | Hon. Steven C. Seeger |
| RUANE CONSTRUCTION, INC. *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Ruane Construction, Inc. helps build Chicagoland with the sturdy hands of cement masons represented by the Cement Masons' Union Local No. 502 ("the Union"). In exchange for the privilege of using the muscle of union labor, Ruane Construction agreed to pay union dues and make contributions to union benefit funds.

Unfortunately, Ruane Construction fell short of its obligations. Sometimes it paid late, and sometimes it didn't pay at all.

The Union and the affiliated trust funds responded by suing Ruane Construction and Mark Ruane, the company's President and sole shareholder. They brought a claim under the Employee Retirement Income Security Act ("ERISA"), seeking unpaid dues and contributions. *See* 29 U.S.C. §§ 1132, 1145. They seek liquidated damages and attorneys' fees, too.

Ruane Construction and Mark Ruane participated in the lawsuit for a little while, but they haven't been seen or heard from in months. Before long, the Union and the trust funds moved for summary judgment, seeking $92,650.29 for unpaid dues, contributions, liquidated damages, and attorneys' fees. Defendants failed to respond.

For the following reasons, the motion for summary judgment is granted in part and denied in part.

## Background

Ruane Construction is a construction company owned and operated by Mark Ruane. *See* Pls.' Statement of Facts, at ¶¶ 5–7 (Dckt. No. 39). The company employs cement masons who are members of the aptly-named Cement Masons' Union Local No. 502 Plasterers Area 5. *Id.* at ¶ 5.

The benefit of union labor comes at a price.  The company agreed to pay union dues and contributions for the benefit of its workers.

Ruane Construction cemented those obligations by signing a memorandum of agreement ("MOA") with the Union.  That agreement requires the company to pay union dues and make other contributions.  *Id.* at ¶ 8.  The MOA, in turn, binds Ruane Construction to the Collective Bargaining Agreement ("CBA") between the Union and the Concrete Contractors Association of Greater Chicago for the period of June 1, 2021 through May 31, 2026.  *Id.* at ¶ 9.

The MOA and the CBA bind Ruane Construction to various agreements that govern the Trust Funds (the "Trust Agreements").  *Id.* at ¶¶ 1, 10.  The Trust Funds basically receive mandatory contributions from employers like Ruane Construction under collective bargaining agreements.  *Id.* at ¶ 2.

Together, the MOA, the CBA, and the Trust Agreements require Ruane Construction to withhold union dues from paychecks, remit the dues to the Union, and make contributions to the Trust Funds.  *Id.* at ¶¶ 11–12.

Ruane Construction must "deduct wages from its cement mason employees' wages for each hour paid as dues and transmit the dues to the Union."  *Id.* at ¶ 12.  Ruane Construction also must "make monthly reports of hours worked by its cement mason employees and pay contributions to the Trust Funds . . . at the negotiated rate for each hour worked."  *Id.* at ¶ 11.

Time is money when it comes to the payments.  Ruane Construction must "report all hours, pay contributions, and transmit all dues" by the fifteenth day of each month "following the calendar month during which the work was performed."  *Id.* at ¶ 13.

The CBA imposes a late fee for delinquent payments.  A failure to pay on time leads to "liquidated damages equal to fifteen percent (15%) of the amount unpaid, plus any reasonable attorneys' fees and costs incurred in the collection process."  *Id.* at ¶ 14.

The agreements also put hooks in Mark Ruane, too.  If Ruane Construction "willful[ly]" fails to pay, then the MOA makes Mark Ruane "personally, jointly, and severally liable" for the unpaid amounts.  *Id.* at ¶ 20.

Ruane Construction came up short in 2023 and 2024.  The company paid the union dues and contributions late, or did not pay them at all.

After months of non-payment, the Union, the Trust Funds, and their affiliates sued Ruane Construction and Mark Ruane under ERISA.  *See* Cplt., at ¶ 25 (Dckt. No. 1) (citing 29 U.S.C. §§ 1132, 1145).  Defendants answered.  *See generally* Defs.' Answer (Dckt. No. 19).

Plaintiffs originally requested unpaid dues and contributions for October 2023 to June 2024.  *See* Cplt., at ¶ 20 (Dckt. No. 1).  As the litigation rolled along, Ruane Construction paid some, but not all, of the amounts owed.  *See, e.g.*, 10/15/24 Status Report, at 2 (Dckt. No. 20) (listing contributions for October 2023 through April 2024 as "paid").

2

By the time that summary judgment rolled around, Ruane Construction paid the dues and contributions that it owed through May 2024, but paid them late. *See* Pls.' Statement of Facts, at ¶¶ 17, 19 (Dckt. No. 39) (requesting liquidated damages for October 2023 through May 2024).

In short, Ruane Construction started catching up, but didn't catch up on everything. The union dues and contributions from June 2024 through September 2024 remain outstanding. *Id.* at ¶ 17.

Specifically, from June to September of 2024, Ruane Construction reported hours worked by its cement-mason employees, but failed to pay the dues and contributions. *Id.* at ¶ 15. Based on the hours worked, Ruane Construction failed to pay (1) $21,558.27 in June 2024, (2) $9,453.03 in July 2024, (3) $10,513.99 in August 2024, and (4) $6,525.83 in September 2024. That's a grand total of $48,051.12 in unpaid dues and contributions. *Id.* at ¶ 17.[1]

By paying late, Ruane Construction also racked up liquidated damages. Ruane Construction failed to pay on time each month from October 2023 through October 2024. *Id.* at ¶ 18. As a result, the CBA required Ruane Construction to pay 15% of the late payments as liquidated damages. *Id.* at ¶¶ 14, 19. The liquidated damages total $19,600.34 for the 13 months of late payments. *Id.* at ¶ 19.

Together, the unpaid dues, unpaid contributions, and liquidated damages total $67,651.76. *Id.* at ¶ 22.

After settlement talks fell apart, Plaintiffs moved for summary judgment. *See generally* Joint Status Report (Dckt. No. 35); Mtn. for Summ. J. (Dckt. No. 37).

Plaintiffs now seek the unpaid dues, contributions, and liquidated damages, plus attorneys' fees. The CBA makes Ruane Construction "liable for reasonable attorney's fees, and for all reasonable cost incurred in the collection process." *See* Pls.' Statement of Facts, at ¶ 24 (Dckt. No. 39). Plaintiffs have accrued $24,998.83 in attorneys' fees and costs. *Id.* at ¶ 26.

The deadline for a response to the motion for summary judgment passed three months ago. *See* 2/3/25 Order (Dckt. No. 40). Defendants never responded.

## Legal Standard

A district court "shall grant" summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[1] As an aside, this Court doesn't know if unpaid dues and contributions have continued to accrue since September 2024. If so, Plaintiffs can file a motion and update the amount owed by the end of this week.

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive summary judgment, the opposing party must go beyond the pleadings and identify specific facts showing the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

The Court construes all facts in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. *See Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016). The Court does not weigh the evidence, judge credibility, or determine the truth of the matter, but rather determines only whether a genuine issue of triable fact exists. *See Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). Summary judgment is appropriate if, on the evidence provided, no reasonable jury could return a verdict in favor of the non-movant. *See Celotex Corp.*, 477 U.S. at 322; *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

But when the non-moving party does not respond to a motion for summary judgment, the court "depart[s] from [its] usual deference toward the non-moving party . . . and accepts all of [the movant]'s unopposed material facts as true." *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citing *Johnson v. Gudmundsson*, 35 F.3d 1104, 1108 (7th Cir. 1994)).

Even so, the fact that a party does not respond to a motion for summary judgment is not a reason, in and of itself, to grant summary judgment to the moving party. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) ("[A] nonmovant's failure to respond to a summary judgment motion, or failure to comply with Local Rule 56.1, does not, of course, automatically result in judgment for the movant.") (quoting *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006)).

## Analysis

The facts are undisputed. Plaintiffs supported the facts with admissible evidence, and Ruane Construction and Mark Ruane didn't respond. So this Court can accept the facts as true. *See* Local Rule 56.1(e)(3) ("Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material.").

The question, then, is whether the undisputed facts entitle Plaintiffs to judgment as a matter of law. The answer is a mixed bag.

## I.     Delinquent Payments, and Liquidated Damages

The undisputed facts confirm that Ruane Construction breached its duty to pay union dues and contributions. But the record is murky when it comes to Mark Ruane.

The Court will start with Ruane Construction.

The existence of the company's obligation is undisputed. Taken together, the MOA, the CBA, and the Trust Agreements required Ruane Construction to pay the dues and contributions,

plus liquidated damages. *See* Pls.' Statement of Facts, at ¶¶ 11–14 (Dckt. No. 39) (citing Defs.' Answer, at ¶¶ 14, 16–17 (Dckt. No. 19)).

In their answer, Defendants admitted that they are bound by the agreements. *See* Defs.' Answer, at ¶¶ 10–14, 16–19 (Dckt. No. 19). And as Plaintiffs point out, section 515 of ERISA "requires employers to comply with the terms of their agreements to make contributions to funds," like the Trust Funds here. *See Central States, Se. & Sw. Areas Pension Fund v. Transport, Inc.*, 183 F.3d 623, 627 (7th Cir. 1999) (citing 29 U.S.C. § 1145).

The amount of the unpaid contributions and dues is undisputed, too. The record shows that Ruane Construction failed to pay $48,051.12 in dues and contributions from June 2024 through September 2024. *See* Picardi Aff., at ¶ 9 (Dckt. No. 39-5).

The obligation to pay liquidated damages isn't disputed, either. ERISA authorizes the recovery of liquidated damages. *See* 29 U.S.C. § 1132(g)(2). Liquidated damages are mandatory, not discretionary. *See Laborers Health and Welfare Trust Fund v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 547 (1988); *Central States, Se. and Sw. Areas Pension Fund v. Gerber Truck Service, Inc.*, 870 F.2d 1148, 1156 (7th Cir. 1989).

The amount of liquidated damages is undisputed as well. Plaintiffs presented admissible evidence supporting the calculation of $19,600.34 in liquidated damages. *See* Picardi Aff., at ¶ 11 (Dckt. No. 39-5).

Putting it all together, there is no issue of fact about the amounts owed. Ruane Construction must pay delinquent dues, contributions, and liquidated damages totaling $67,651.76 (*i.e.*, $48,051.12 for unpaid dues and contributions, plus $19,600.34 in liquidated damages).

That leaves the other Defendant, Mark Ruane, as the last man standing. The question is whether Mark Ruane will be jointly and severally liable, in his personal capacity, for the company's failure to pay. Or more precisely, the question is whether Plaintiffs demonstrated that there is no genuine issue of material fact about Mark Ruane's liability.

The answer depends on whether the company "willful[ly]" failed to pay. If so, Mark Ruane would be jointly and severally liable under the terms of the MOA. *See* Pls.' Statement of Facts, at ¶ 20 (Dckt. No. 39) (citing MOA, at ¶ 8 (Dckt. No. 1-1)). Basically, if the company failed to pay, and did so willfully, then Mark Ruane has skin in the game.

Again, the genesis of the obligation is the MOA. The agreement provides: "That the individual signing this agreement agrees to be personally, jointly and severally liable with the employer for any willful failure to pay wages or to accurately report hours to the fringe benefits as required by contract." *See* MOA, at ¶ 8 (Dckt. No. 1-1).

The language is a little clunky. The sentence begins with a wayward use of "that," apparently referencing the phrase "[t]he parties agree" a few paragraphs earlier. *Id.* at ¶¶ 5, 8.

But the meaning isn't hard to figure out. The person signing the agreement is personally on the hook if the company willfully fails to pay.

Once again, the facts are undisputed. But there aren't a lot of facts.

As Plaintiffs point out, Ruane Construction was well aware of its obligation to pay. After all, the company made payments for the period before June 2024. And the company submitted reports for June 2024 through September 2024, detailing the hours worked by its masons, too. *See* Pls.' Statement of Facts, at ¶ 15 (Dckt. No. 39).

What's more, Defendants admitted in their answers that they are bound by the MOA, the CBA, and the Trust Agreements. Those agreements solidified the obligations in unmistakable terms. *See* Defs.' Answer at ¶¶ 10–14, 16–19 (Dckt. No. 19).

Plaintiffs think that a failure to pay, with knowledge of a duty to pay, is enough to show that the failure to pay is "willful." As Plaintiffs see it, Ruane Construction *knew* that it needed to pay dues and contributions, but failed to pay. In their view, "Ruane Construction's failure to pay and failure to timely pay the contributions and dues . . . can only be viewed as willful." *See* Pls.' Mem. in Supp. of Mtn. for Summ. J., at 9 (Dckt. No. 38).

Maybe that's what "willful" means. But Plaintiffs cite no authority to support that reading. And it is worth pausing to consider whether that expansive reading is right.

For starters, the MOA itself doesn't lend much help. The MOA does not define what constitutes a "willful failure to pay wages or to accurately report hours to the fringe benefits." *See generally* MOA (Dckt. No. 1-1).

Illinois case law does not shed much light in this context. This Court took a look for any cases construing similar provisions in comparable agreements, but came up empty.

Even so, the mere presence of the word "willful" is telling. A failure to pay, standing alone, can't mean the same thing as a *willful* failure to pay. After all, the adjective "willful" has to mean something. Not every failure to pay is a willful failure to pay.

The adjective is there. So the adjective has to do some work. Standing around and doing nothing isn't great for people, and it isn't great for words, either.

"Willful" is a notoriously difficult word to define. As the Supreme Court has said, the word is "widely used in the law, and, [] has not by any means been given a perfectly consistent interpretation." *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

"In common usage the word 'willful' is considered synonymous with such words as 'voluntary,' 'deliberate,' and 'intentional.'" *Id.* That is, the word "willful" is "generally understood to refer to conduct that is not merely negligent." *Id.* Willful conduct means conduct that is something more than negligent or accidental.

6

Courts regularly turn to dictionary definitions to interpret the term "willful." *See, e.g.*, *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (defining "willful" as "voluntary" or "intentional") (quoting *Willful*, Black's Law Dictionary (5th ed. 1979)); *Mass. Bay Ins. Co. v. Vic Koenig Leasing, Inc.*, 136 F.3d 1116, 1124 (7th Cir. 1998) (defining a "willful" action as "one done *intentionally, knowingly, and purposely*, . . . as distinguished from an act done . . . inadvertently") (alterations and emphasis in original) (quoting *Willful*, Black's Law Dictionary (6th ed. 1990)); *Canada Life Ins. Co. v. Stoner*, 1995 WL 733458, at *3 (N.D. Ill. 1995) ("Proceeding from a conscious motion of the will; voluntary; knowingly; deliberate.  Intending the result which actually comes to pass; designed; intentional; purposeful; not accidental or involuntary.") (quoting *Willful*, Black's Law Dictionary (6th ed. 1990)).

The most recent edition of Black's Law Dictionary defines "willful" as "done wittingly or on purpose, as opposed to accidentally or casually; voluntary and intentional . . . [and] connot[ing] blameworthiness." *Willful*, Black's Law Dictionary (12th ed. 2024).  "A voluntary act becomes willful, in law, only when it involves conscious wrong or evil purpose on the part of the actor, or at least inexcusable carelessness." *Id.*

Willfulness suggests intentionality.  Black's Law Dictionary says it quite clearly: "willful" means "on purpose," or "intentional," or "connot[ing] blameworthiness." *Id.*  It suggests an ability or an opportunity, plus a decision not to pursue it.  Not every failure to do something is willful, because some things are simply undoable.  There is a big difference between a willful failure to go for a run, and a willful failure to run a four-minute mile.

Remember, the provision at hand is about holding an individual personally liable for the company's obligations.  It sounds like it addresses a situation where the company *could* pay, but *didn't* pay, because of some intentional decision.  A failure to pay when the company has no money doesn't sound willful, because the company didn't have the ability to pay anyway.

It would be strange if "willful" meant the same thing as "knowing," as Plaintiffs suggest.  The law uses both words to described mental states, and they typically mean different things.  *See, e.g.*, *United States v. Obiechie*, 38 F.3d 309, 315 (7th Cir. 1994) ("'[W]illfully' must mean something more than 'knowingly' . . . .").

Knowing something is not the same as doing something on purpose.  A company with no money might know that it didn't pay, because it *couldn't* pay.  But that's a different story than *choosing* not to pay.

That said, reading "willful" to require an ability to pay opens up a rabbit hole with a lot of tunnels.  The situation is simple if the company has a bank account overflowing with cash, and then simply refuses to pay.  But what if a company has limited assets, and has to pick and choose which creditors to pay?  What if a company could pay *something*, but not *everything*?  What if a company can't foot the whole bill?

That is, what if a company can pay part of the dues, but not all of the dues?  And what if the company can pay some creditors (including the benefit funds), but not everyone?  If a

company has dwindling assets, and the company pays other creditors instead of the benefit funds, is that a willful failure to pay the benefit funds?

In any event, maybe Mark Ruane could have developed an argument along those lines. Maybe he could have argued that the company was out of money, and there was nothing that he could do, so his hands were tied.

But he didn't. He did not make any argument that the failure to pay was not willful. And he didn't present any facts, either. So, the Court is left with a one-sided record.

Even so, Mark Ruane didn't file the motion, and he doesn't have the burden. As the movants, Plaintiffs have the burden. They must demonstrate the absence of a genuine issue of material fact. And on this score, the record is barren, leaving something to be desired.

In their statement of material facts, Plaintiffs quoted the language of the MOA. *See* Pls.' Statement of Facts, at ¶ 20 (Dckt. No. 39). And then, Plaintiffs offered the following sentence: "Through the MOA, Mark became personally, jointly and severally liable with Ruane Construction for all dues obligations to the Union and contribution obligations to the Trust Funds and LMCC." *Id.* at ¶ 21. Plaintiffs ended by simply declaring that Mark Ruane "owes $67,651.46." *Id.* at ¶ 22.

That's a conclusion, not a fact. Plaintiffs didn't muster any facts supporting the notion that the company's failure to pay was willful.

True, Ruane Construction *knew* that it needed to pay, but didn't pay. And the company did make some payments, albeit late. Putting those facts together, a jury might find that the company willfully failed to pay. But at summary judgment, the Court must draw all reasonable inferences in favor of the non-movant, even when the non-movant failed to respond. Against that backdrop, the Court cannot make the inferential leap from knowledge to willfulness.

At the end of the day, Plaintiffs needed to do more than establish that the company failed to pay, and knew about the need to pay. To hold Mark Ruane personally responsible, Plaintiffs needed to come forward with admissible evidence that the company failed to pay willfully. And here, they didn't.

In sum, the undisputed facts confirm that Ruane Construction must pay delinquent dues, contributions, and liquidated damages totaling $67,651.76. But Plaintiffs neglected to come forward with facts showing that the company failed to pay willfully. For that reason, the motion for summary judgment is granted as to Ruane Construction, and is denied as to Mark Ruane.

## II.     Attorneys' Fees and Costs

The next question is whether the company must pay attorneys' fees and costs. The answer is simple. The duty to pay is undisputed, and so is the amount owed.

The CBA provides that the "delinquent Employer shall be liable for reasonable attorney's fees, and for all reasonable cost incurred in the collection process." *See* Pls.' Statement of Facts, at ¶ 24 (Dckt. No. 39). Plaintiffs presented admissible evidence that they incurred $24,638.83 in attorneys' fees and costs. *See* Blumthal Aff., at 1 (Dckt. No. 39-6).

Based on the undisputed record, Ruane Construction must pay attorneys' fees and costs totaling $24,638.83.

### Conclusion

For the foregoing reasons, Plaintiffs' motion for summary judgment is granted in part and denied in part. The motion is granted as to Defendant Ruane Construction, Inc., and is denied as to Mark Ruane.

Date:   June 26, 2025

Steven C. Seeger
United States District Judge